**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MICHAEL FROIO and MIKHAIL SURMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OCEAN SPRAY CRANBERRIES, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, MICHAEL FROIO and MIKHAIL SURMAN (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Ocean Spray Cranberries, Inc. ("Ocean Spray" or "Defendant"). Plaintiffs make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1. Defendant Ocean Spray claims that it is a pioneer of juice blends as a result of its "innovation and resourcefulness." According to its website, Ocean Spray claims it was formed in 1930 by "growers with a simple love for cranberries." Ocean Spray's first products were jellied cranberry sauce, and it became the first producer of cranberry juice. Ocean Spray's Cranberry Juice Cocktail is not only a staple product of Ocean Spray but remains one of its most popular products. In 1963, Ocean Spray created the industry's first juice blend, which was Cran-Apple. The overwhelming success of its Cran-Apple juice blend led Ocean Spray to add more

juice blends to its line of products.[1] In general, juice blends have become a staple for consumers over the past few decades.

2. Ocean Spray manufactures, distributes, advertises, and sells several products with specific representations that the products contain *"No High Fructose Corn Syrup, Artificial Colors or Flavors."* Among these purportedly non-artificial colored or flavored juice beverage products, include:

1) Ocean Spray 100% Apple Juice;

2) Ocean Spray Cran Cherry Flavor 100% Juice;

3) Ocean Spray Cranberry Juice Cocktail;

4) Ocean Spray Cran Pineapple;

5) Ocean Spray Cran Pomegranate;

6) Ocean Spray Diet Cran Pomegranate;

7) Ocean Spray Cran Grape;

8) Ocean Spray Cherry;

9) Ocean Spray Diet Cran Cherry;

10) Ocean Spray Wave Berry Medley;

11) Ocean Spray Cran Apple;

12) Ocean Spray Wave Apple with White Cranberries;

(collectively, the "Products").

3. Consistent with Defendant's self-promotion as a leader in fruit juice blends, the front packaging of every Product states in prominent lettering: *"No High Fructose Corn Syrup, Artificial Colors or Flavors."* To reinforce the impression that the Products do not contain artificial coloring

[1] http://www.oceanspray.com (last visited June 2018)

or flavoring, the front packaging of every Product displays pictures of water, fields, and fruits pertaining to the specific fruit juice blend in question. An example is depicted below:




4. Contrary to the labeling, however, on information and belief, each of the Products contains artificial flavoring that is used to simulate and affect the fruit flavors in the challenged products.

5. Defendant's representations are false, misleading, unfair, unlawful, and are likely to deceive members of the public, and continue to do so. Defendant's practices violate New York General Business Law §§ 349 and 350, and Mass. Gen. Laws ch. 93A. In addition, Defendant's representations also give rise to a 49-state class alleging claims for fraud, negligent misrepresentation, unjust enrichment, and breach of express warranty.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendant. Defendant is Delaware corporation with its principal place of business located in Massachusetts, purposefully avails itself of the United States consumer market, and distributes the Products to locations within this District and thousands of retail locations throughout across the United States, including, Massachusetts and New York, where the Products are purchased by thousands of consumers on a weekly basis.

7. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed Plaintiffs' class, any member of the Plaintiffs' class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

8. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, emanated or occurred within this District, and the Defendant's principal place of business is also in the District.

## PARTIES

9. Plaintiff Michael Froio is a citizen of the United States and a resident of Massachusetts when he purchased Ocean Spray 100% Apple Juice, Ocean Spray Cran

Pomegranate, Ocean Spray Cherry, Ocean Spray Cran Grape, and Ocean Spray Cran Apple between 2014-2017 from Target, Stop & Shop, Shaw's Supermarkets, Tedeschi Food Shops, and other retail stores in and around Cohasset, Massachusetts and other neighboring cities and towns.

10. Plaintiff Mikhail Surman is a citizen of the United States and was a resident of New York when he purchased the Ocean Spray 100% Apple Juice, Ocean Spray Cran Pomegranate, Ocean Spray Cran Grape, Ocean Spray Cran Apple, and Ocean Spray Wave Apple with Cranberries between 2014-2017 from Shop Rite, Stop & Shop, and other retail stores in and around Brooklyn and Staten Island, New York, and other neighboring cities and towns.

11. Plaintiffs Michael Froio and Mikhail Surman will collectively be referred to as "Plaintiffs."

12. Prior to purchasing the Products, each Plaintiff saw and read the front of the Products' packaging and relied on the representations and warranty that the Products contained "No High Fructose Corn Syrup, Artificial Colors or Flavors." The language "No High Fructose Corn Syrup, Artificial Colors or Flavors" is placed in a box-like feature with a contrasting color behind the lettering to ensure it stands out to the consumer. Plaintiffs also saw the pictures of fruits, water, and fields on the front packaging, which—in the context of the labeling "No High Fructose Corn Syrup, Artificial Colors or Flavors"—reinforced the impression that the Products did not contain artificial or synthetic colors or flavors. Plaintiffs purchased the Products at a substantial price premium and would not have bought the Product had they known that the labeling they each relied on was false, misleading, deceptive, and unfair.

13. Plaintiffs would purchase the Products again in the future if Defendant changed the composition of the Products so that they conformed to their labeling and marketing.

14. Defendant Ocean Spray Cranberries, Inc. is a Delaware Corporation that has its principal place of business located at One Ocean Spray Drive, Lakeville, Massachusetts 02349.

15. Defendant produces, markets and distributes fruit juice beverages and the Products throughout retail stores across the United States, including Massachusetts. Defendant knew that the labeling of the Products is false and misleading to a reasonable consumer because the Products contain artificial coloring, which is inconsistent with the Product's labeling.

16. Plaintiffs and members of the classes described below paid a premium for Defendant's Products over comparable products that did not purport to contain no artificial flavors. In fact, companies producing comparable products intentionally disclose that their products contain artificial flavoring.

**FACTS COMMON TO ALL CAUSES OF ACTION**

17. Consumers have become increasingly interested in foods, cleaning products, bath and beauty products, and everyday household products that do not contain synthetic or chemical ingredients. Companies such as Ocean Spray have capitalized on consumers' preference for non-artificial or synthetic ingredients. Consumers are willing to pay, and have paid, a premium for products branded as containing no artificial or synthetic ingredients.

18. In 2010, sales of products with no artificial or synthetic related ingredients grew 6% to $117 billion.[2] Reasonable consumers, including Plaintiffs and the Class Members, value products that do not contain artificial or synthetic ingredients.

19. As a result of consumers' desires for products that do not contain artificial or synthetic ingredients, the Federal Trade Commission ("FTC") has warned marketers that the use of the term 'natural' may be deceptive: "Marketers that are using terms such as 'natural' must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a 'natural' claim as representing that a product contains no *artificial ingredients*, then the marketer must be able to substantiate that fact.[3] Accordingly, Defendant must substantiate any statements that claim the Products contain no "artificial colors or flavors."

20. Consumers lack the meaningful ability to test or independently verify whether a product contains certain artificial or synthetic ingredients, especially at the point of sale. Consumers would not know the true nature of the ingredients and must trust the representations on packaging. Moreover, consumers are not expected or required to scour the ingredients list on the back of the Products to confirm or debunk Defendant's prominent front-of-the-packaging claims, representations, and warranties that the Products contain *"No High Fructose Corn Syrup, Artificial Colors or Flavors."*

---

[2] *About the Natural Products Association,* NATURAL PRODUCTS ASSOCIATION (last accessed July 2018), http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8; *Chemical Blessings What Rousseau Got Wrong*, THE ECONOMIST, Feb. 4, 2008, available at http://www.economist.com/node/10633398; *see also* Hunger Oatman-Standford, *What Were We Thinking? The Top 10 Most Dangerous Ads*, COLLECTORS WEEKLY (Aug. 22, 2012), http://www.collectorsweekly.com/articles/the-top-10-most-dangerous-ads/ (featuring advertisements for dangerous synthetic chemicals that were once marketed as safe).

[3] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2015)

21. Even sophisticated consumers should be able to trust the labeling on products. Manufacturers are required to properly label and inform consumers of the true nature of the ingredients for consumers to make an informed decision. Discovering that ingredients are actually artificial or synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.

22. Malic acid is a substance used in the food industry to generate a sour, fruity, or tart taste, which is either naturally occurring or artificial/synthetic. Fumaric acids are used for similar purposes as malic acid.

23. Naturally occurring malic acid is referred to as "l-malic acid," which is found is fruits and vegetables. The artificial or synthetic malic acid is known as "dl-malic acid,"[4] which is a racemic mixture of d- and l-isomers.

24. Malic acid is a saturated dicarboxylic acid whereas fumaric acid is the trans-isomer. Dl-malic acid is a synthetic ingredient, chemically manufactured from petroleum feed stocks.[5] It is made in petrochemical plants from benzene or butane. Dl-malic acid is scientifically known as d-hydroxybutanedioic acid. The synthetic ingredient dl-malic acid is used by Defendant to provide characterizing flavors similar to the natural fruit flavor Defendant claims is contained in the Products.

25. The Products are flavored with an additional artificial ingredient commonly known as "fumaric" acid. Fumaric acid is also manufactured from petrochemical feedstock, either benzene or butane, through chemical transformation to maleic anhydride.[6] It is used as

---

[4] West TP, Malic acid production from thin stillage by *Aspergillus* species. Biotechnol Lett 33: 2463-2467 (2011).

[5] West, J Microbial , Biochem Technol, 4:4 DOI:10.4172/1948:1000e106 (2012).

[6] Maleic anhydride is an organic compound with the formula $C_2H_2(CO)_2O$. It is the acid anhydride of maleic acid. It is a colorless or white solid with an acrid odor.

feedstock in other manufacturing processes to make paints, polymeric plastic resins, industrial coatings, pesticides, and chemicals.[7] Similar to malic acid, fumaric acid can be naturally occurring in plants, fruits, and vegetables. However, Defendant incorporates chemically manufactured fumaric acid into its Products, which reinforces the characterizing flavors similar to the natural fruit flavor Defendant claims is contained in the Products.

26. Defendant did not disclose that the malic acid and fumaric acid used in the Products are artificial ingredients. A reasonable consumer understands Defendant's claims that the Products contain no "artificial" flavoring to mean that the flavoring is derived from a natural source.

27. The label claims that it contains no artificial flavors is false because dl-malic acid and the fumaric acid used in the Products are artificial flavors. Defendant's representations that the Products contain no artificial flavoring induced consumers, including Plaintiff and Class Members, to pay a premium to purchase the Products. Plaintiff and Class Members relied on Defendant's false and misleading misrepresentations in purchasing the Products at a premium price above comparable alternatives that are not represented as containing no artificial flavoring. If not for Defendant's misrepresentations, Plaintiff and Class Members would not have been willing to purchase the Products at a premium price. Accordingly, they have suffered an injury as a result of Defendant's misrepresentations.

28. Based on the language that appears on the front of each of the Products, Plaintiffs reasonably believed that the Products contained no artificial flavoring.

29. The phrase "No…artificial colors or flavors" is a representation to a reasonable consumer that the Products contain only natural flavors. The phrase is misleading to a

---

[7] MDPI, Fermentation, 3, 33;doi:10.3390/fermentation3030033 (2017).

reasonable consumer because Products actually contain unnatural and synthetic ingredients for flavoring.

30. Defendant prominently displays that the Products contain "No High Fructose Corn Syrup, artificial colors or flavors."

31. The phrases "No High Fructose Corn Syrup, artificial colors or flavors" are representations to a reasonable consumer that Products contains only natural flavors. These phrases are misleading to a reasonable consumer because the Products actually contains unnatural and synthetic flavors.

32. Defendant knew that consumers will pay more for a product labeled no artificial colors and flavors and intended to deceive Plaintiffs and putative class members by labeling Products as purportedly naturally flavored products.

33. Plaintiffs did not discover that the labeling was false and misleading until 2018 when they discovered the Products contained artificial flavoring. Despite reasonable diligence, Plaintiffs would not have discovered and lacked the means to discover the deceptive nature of Defendant's violations of law, because they lacked the means to do so and relied on the Defendant's obligation, as manufacture, to label its Products in compliance with the law. Moreover, Defendant's labeling practices were/are intentionally intended to deceive consumers, including Plaintiffs and the proposed classes, because the labeling lists ingredients for the flavoring of the Product that are not artificial, which further impeded Plaintiffs' ability to discover the violations of law. Plaintiffs and the proposed classes are entitled to delayed discovery and equitable tolling because of Defendant's intentional concealment of the violations of law.

**U.S. FOOD DRUG AND COSMETIC ACT AND STATE STATUTES**

34. The U.S. Food Drug and Cosmetic Act ("FD&C") is a set of laws passed by Congress in 1938 that provides authority to the U.S. Food and Drug Administration ("FDA")[8] to oversee the safety of food, drugs, and cosmetics. There is a distinction in food adulteration between those that are added and those that are naturally present. Substances that are added are held to a stricter "may render (it) injurious to health" standard, whereas substances that are naturally present need only be at a level that "does not ordinarily render it injurious to health."[9]

35. The FDA has established rules, which are been codified in the Code of Federal Regulations ("CFR"), specifically addressing food labeling.

36. 21 CFR 101.22(a)(1): The term *artificial flavor* or *artificial flavoring* means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

37. 21 CFR 101.22(a)(3): The term *natural flavor* or *natural flavoring* means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.

38. 21 CFR 101.22(a)(5)(c): A statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary

---

[8] 15 U.S.C. 1453, 1454, 1455; 21 U.S.C. 321, 331, 342, 343, 348, 371; 42 U.S.C. 243, 264, 271.

[9] FD&C Act Chapter IV.

person under customary conditions of purchase and use of such food. The specific artificial color used in a food shall be identified on the labeling when so required by regulation in part 74 of this chapter to assure safe conditions of use for the color additive.

39. 21 CFR 102.5(c): The common or usual name of a food shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s) and/or the need for the user to add any characterizing ingredient(s) or component(s) when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food. The following requirements shall apply unless modified by a specific regulation in subpart B of this part.

40. 21 CFR §101.4(a)(1) provides that "[i]ngredients required to be declared on the label or labeling of a food, including foods that comply with standards of identity, except those ingredients exempted by §101.100, shall be listed by common or usual name…"[10]

41. Congress has defined "synthetic" to mean a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources…7 U.S.C. § 6502 (2.1).

42. Several local governments, including, New York and Massachusetts have developed and passed laws to regulate the identification, labeling, and disclosures of food products to ensure consumers are not misled or deceived. In addition to creating a robust set of laws, local governments have incorporated provisions of the FD&C.

[10] 21 CFR §101.4(a)(1).

43. New York's Pure Food and Drug Act §71.05(a) provides that "[n]o person shall manufacture, produce, pack, possess, sell, offer for sale, deliver or give away any food, drug or cosmetic which is adulterated or misbranded. New York, The Pure Food and Drug Act §71.05(c) states that "[a] food shall be deemed adulterated if the Department has determined the food to be adulterated or as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §342)" and "[a] food shall be deemed misbranded in accordance with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343)."

44. Massachusetts General Laws (Mass. Gen. Laws) Chapter 94, Section 186, specifically identifies how products are deemed 'adulterated' and is similar to New York law, which incorporates the FD&C Act. Mass. Gen. Laws Chapter 94, Section 187 states: The term "misbranded'" as used in this chapter shall apply to each drug, or article of food, or article which enters into the composition of food, the package or label of which bears any statement, design or device regarding such article or the ingredients or substance contained therein, which is false or misleading in any particular, and also to any food or drug product which is falsely branded as to the state or country where it was manufactured or produced." For purposes of this law, a product "shall also be deemed to be misbranded" under the following circumstances:

a. "[I]f its labeling is false or misleading in any particular;"

b. "[I]f the package containing it or its label bears any statement, design or device regarding the ingredients or the substances contained therein which is false or misleading in any particular;"

c. "[I]f it purports to be or is represented as a food for which a standard of quality has been prescribed by the department and its quality falls below such standard, unless its label bears a statement as to its true nature;

d. "[I]f it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact. . . ."

45. Title 940 of the Code of Massachusetts Regulations establishes rules governing, among other things, retail advertising. Under Section 3.02(2), "[n]o statement or illustration shall be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered . . . ." 940 Mass. Code Regs. 3.02(2). Under Section 6.01, an advertisement is defined as including a "representation . . . printed on or contained in any tag or label which is attached to or accompanies any product offered for sale." Section 6.03(2) provides that "[s]ellers shall not use advertisements which are untrue, misleading, deceptive, fraudulent, falsely disparaging of competitors, or insincere offers to sell." 940 Mass. Code Regs. 6.03(2).

**CLASS ALLEGATIONS**

46. Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products during the class period, excluding people in California (the "Forty-Nine-State Class"). Also excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

47. Plaintiff Surman seeks to represent a class defined as all persons in the New York who purchased the Products during the class period (the "New York Subclass"). Excluded from the New York Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

48. Plaintiff Froio seeks to represent a Subclass of all persons in Massachusetts who purchased the Products during the class period (the "Massachusetts Subclass"). Excluded from the Massachusetts Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Products for resale, and the Judge(s) assigned to this case.

49. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class members include, but are not limited to the following:

a. whether Defendant misrepresented material facts concerning the Products on the label of every product;

b. whether the Products contain artificial flavoring;

c. whether Defendant's conduct is/was unfair and/or deceptive;

d. whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiffs and the classes;

e. whether Defendant breached express warranties to Plaintiffs and the classes;

f. whether Defendant failed to disclose the presence of artificial coloring in the Products;

g. whether the statement "No…Artificial Colors or Flavors" is false or misleading;

h. whether Defendant violated Gen. Mass. Law c 93a;

i. whether Defendant violated New York Gen. Bus. Law sections 349, 350;

j. whether the statement "No Artificial Colors or Flavors" violated any express or implied warranties;

k. whether there should be a tolling of the statute of limitations;

l. whether Plaintiffs and the classes have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

m. whether the Class is entitled to restitution, rescission, damages, and attorneys' fees and costs.

49. Plaintiffs' claims are typical of those of other class members because Plaintiffs, like all members of the classes, purchased Defendant's Products bearing the representations and Plaintiffs sustained damages from Defendant's wrongful conduct.

50. Plaintiffs will fairly and adequately protect the interests of the classes and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the classes.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

52. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate equitable relief with respect to the classes as a whole.

53. The prosecution of separate actions by members of the classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the classes even where certain Class members are not parties to such actions.

## COUNT I

### Fraud

### (On Behalf of Plaintiffs and All Class Members Against Defendant)

54. Plaintiffs repeat and re-allege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

55. Plaintiffs bring this claim individually and on behalf of the proposed Forty-Nine-State Class, New York Subclass, and Massachusetts Subclass against Defendant.

56. Defendant made material representations through its labeling to Plaintiffs and Class members that the Products contain *"No High Fructose Corn Syrup, Artificial Colors, or Flavors."*

57. Defendant provided Plaintiffs and Class members with false or misleading material information about the Products, because the Products contain artificial flavors.

58. Defendant made these misrepresentations to Plaintiffs and Class members that the Products contain *"No High Fructose Corn Syrup, Artificial Colors, or Flavors,"* knowing it was false.

59. Defendant's misrepresentations, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Products.

60. Defendant made these misrepresentations to Plaintiff and Class members knowing that they were false and Plaintiffs would rely to their detriment, which they did, by purchasing the Products.

61. Defendant's fraudulent actions harmed Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

**<u>COUNT II</u>**

**Negligent Misrepresentation**

**(On Behalf of Plaintiff Florio and All Class Members Against Defendant)**

62. Plaintiff Froio repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

63. Plaintiff Michael Froio brings this claim individually and on behalf of the proposed Forty-Nine-State Class and Massachusetts Subclass against Defendant.

64. At all times, in purchasing the Products, Plaintiffs and Class members believed prior to making purchases that they were purchasing Products that contain *"No High Fructose Corn Syrup, Artificial Colors, or Flavors"* as a result of Defendant's labeling and advertising.

65. Plaintiff Froio and class members read and relied on Defendant's labeling on the front of the Products setting forth the representations and/or warranties prior making any purchase of the Products.

66. Defendant had a duty to disclose and failed to disclose to Plaintiffs and Class members that the Products contain artificial flavors.

67. At the time Defendant made the false claim that its Products contained *"No High Fructose Corn Syrup, Artificial Colors, or Flavors."* Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

68. In addition, Defendant omitted material facts about the Products by not disclosing on the labeling that the Products contained synthetic dl-malic and fumaric acid.

69. Plaintiffs and the Class Members reasonably and justifiably relied on Defendant's statements or omissions and were deceived and induced into purchasing the Products.

70. The misrepresentations and/or omissions made by Defendant, upon which Plaintiffs and the Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class members to purchase the Products. Defendant's representations that the Products contain no *"No High Fructose Corn Syrup, Artificial Colors, or Flavors"* were material to the Plaintiffs, Class members, and any reasonable consumer in their decision to purchase.

71. Plaintiffs and Class members would not have purchased the Products and/or would not have paid a price premium therefore, if the true facts had been known to them regarding the falsity of Defendant's statements and representations.

72. The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT III**

**Breach of Express Warranty**

**(On Behalf of Plaintiffs and All Class Members Against Defendant)**

73. Plaintiffs repeat and re-allege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

74. Plaintiffs bring this claim individually and on behalf of the proposed Forty-Nine-State Class, New York Subclass, and Massachusetts Subclass against Defendant.

75. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products contain *"No High Fructose Corn Syrup, Artificial Colors, or Flavors."* Defendant intentionally highlights the language *"No High Fructose Corn Syrup, Artificial Colors, or Flavors"* by using a different color behind the lettering to prominently display the express warranty.

76. The front labeling with the representations of fruits, water, leaves, and fields is also misleading and further creates an express warranty to support the representation that there is *"No High Fructose Corn Syrup, Artificial Colors, or Flavors."*

77. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and the Class and respective Subclasses regarding the Products, became part of the basis of the bargain between Defendant and Plaintiffs, the Class, and Subclasses, which creates

an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

78. The Products do not conform to the express warranty that the Products contain *"No High Fructose Corn Syrup, Artificial Colors, or Flavors,"* because they contain ingredients that are unnatural and synthetic i.e. dl-malic and fumaric acid.

79. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class members have been injured and harmed because:

(a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients;

(b) they paid a substantial price premium based on Defendant's express warranties; and

(c) the Products do not have the characteristics, uses, or benefits as promised.

**COUNT IV**

**Unjust Enrichment**

**(on Behalf of Plaintiffs and All Class Members against Defendant)**

80. Plaintiffs repeat and re-allege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81. Plaintiffs bring this claim individually and on behalf of the proposed Forty-Nine-State Class, New York Class, and Massachusetts Class against Defendant.

82. Plaintiffs, Class members and the respective Subclasses conferred monetary benefits to Defendant by purchasing the Products for a premium price.

83. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs, Class members, and the respective Subclasses' purchases of the Products based on the

representations that the Products contain *"No High Fructose Corn Syrup, Artificial Colors, or Flavors."*

84. Retention of those monies under these circumstances is unjust and inequitable, because of Defendant's misrepresentations and omissions about the Products caused injuries to Plaintiffs, Class members, and the respective Subclasses, because they would not have purchased the Products if the true facts regarding the artificial and/or synthetic ingredients had been known.

85. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs, Class members, and the respective Subclasses is unjust and inequitable, Defendant must pay restitution to Plaintiffs, Class members, and the respective Subclasses for their unjust enrichment, as ordered by the Court.

**COUNT V**

**Violation of New York GBL § 349**

**(On Behalf of Plaintiff Mikhail Surman and All New York Subclass Members against Defendant)**

86. Plaintiff Surman repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

87. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

88. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, New York, The Pure Food and Drug Act §71.05(a), New York, The Pure Food and Drug Act §71.05 (c), and as such, Plaintiff Surman and the New York Subclass Members seek monetary damages and the entry of preliminary and

permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

89. There is no adequate remedy at law.

90. Defendant misleadingly, inaccurately, and deceptively presented its Products to consumers.

91. Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as not containing artificial flavoring —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.

92. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

93. Plaintiff Surman and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations—containing artificial flavors. Accordingly, Plaintiff Surman and the New York Subclass Members received less than what they bargained and/or paid for.

94. Defendant's advertising and product packaging and labeling induced the Plaintiff Surman and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

95. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff Surman and the New York Subclass have been damaged thereby.

96. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff Surman and the New York Subclass Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

97. Plaintiff Surman and the New York Subclass Members seek damages, including treble damages, under GBL § 349.

## COUNT VI

### Violation of New York GBL § 350

### (On Behalf of Plaintiff Mikhail Surman and All New York Subclass Members against Defendant)

98. Plaintiff Surman repeats and re-alleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

99. N.Y. Gen. Bus. Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

100. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

101. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products do not contain artificial flavors.

102. Plaintiff Surman and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendant's representations—*"No High Fructose Corn Syrup, Artificial Colors, or Flavors."* Accordingly, Plaintiff Surman and the New York Subclass Members received less than what they bargained and/or paid for.

103. Defendant's advertising, packaging and product labeling induced Plaintiff Surman and the New York Subclass Members to buy Defendant's Products.

104. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

105. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

106. Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

107. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

108. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff Surman and the New York Subclass Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

109. Plaintiff Surman and the New York Subclass Members seek damages, including treble damages, under GBL § 350.

**COUNT VII**

**Violation of New York GBL § 350-a(1) by Omission**

**(On Behalf of Plaintiff Mikhail Surman and All New York Subclass Members against Defendant)**

110. Plaintiff Surman repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

111. N.Y. Gen. Bus. Law § 350-a(1) expressly covers material omissions:

> In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual…

112. Defendant's products' labeling and advertising contain misleading and/or unfair material omissions concerning Defendant's Products. The Products' labeling and advertising omit that: 1) the Products contain synthetic ingredients; and 2) the Products contain artificial flavors.

113. Plaintiff Surman and the New York Subclass Members have been injured inasmuch as they relied upon the labels and advertising and paid a premium for Products that, contrary to Defendant's labels and advertising, contain artificial flavors.

114. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

115. Defendant's dissemination of advertising and labeling containing material omissions of fact constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

116. Defendant's material misrepresentations by way of omission, as described in this Complaint, were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations by way of omission.

117. Defendant's advertising and labeling for the Products induced the Plaintiff Surman and the New York Subclass Members to buy the Products at a premium price.

118. Plaintiff Surman and the New York Subclass Members relied on Defendant's advertising, which was deceptive, false, and contained material omissions.

119. As a result of Defendant's false and misleading advertising and labeling, the Plaintiff Surman and the New York Subclass Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

120. Plaintiff Surman and the New York Subclass Members seek damages, including treble damages, under GBL § 350-a(1).

## COUNT VIII

### Violation of Chapter 93A Mass. Gen. Laws

### (On Behalf of Plaintiff Michael Froio and All Massachusetts Subclass Members against Defendant)

121. Plaintiff Froio repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

122. A demand letter as specified by Mass. Gen. Laws Chapter (ch.) 93A, Section9(3) was sent to Defendants by certified mail and standard mail on July 19, 2018 to its main office in Massachusetts. The demand was sent more than 30 days prior to the filing of this Complaint and no adequate response has been received during the required time frame.

123. This action is appropriate because pursuant to General Law Chapter 93A, Section9(2):

a. The unfair and deceptive act or practice committed by Defendant has caused similar injury to Plaintiff Michael Froio, as to numerous other persons similarly situated which Plaintiff Froio fairly represents.

b. Plaintiff Froio brings this action on behalf of himself and all other persons within the Commonwealth similarly situated, with exclusions previously noted.

c. Given the practice detailed above has persisted over time for many years and that the Defendant has, at least its principal place of business in Massachusetts, and on information and belief, market, distribute and sell to retail locations in the Commonwealth, it would be impractical, if not impossible to seek relief for consumers on an individual basis.

124. Defendant violated and continues to violate 940 Mass. Code Regs. 6[.]01 and violate the Federal Trade Commission Act[11], 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), 21 CFR 101.22(a)(1), 21 CFR 101.22(a)(3), 21 CFR 101.22(a)(5)(c), 21 CFR 101.25(a), 21 CFR 101.4(a)(1), and 7 U.S.C. §6502, as alleged herein.

125. Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of Gen. Mass. Laws ch. 93A in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits, and Defendant's competitors do not engage in the same unlawful, unfair and deceptive practice.

[11] Pursuant to the Federal Trade Commission Act, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a). It is an "unfair or deceptive act or practice" to disseminate "any false advertisement . . . (2) [b]y any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics." 15 U.S.C. § 52(a), (b).

126. Defendant violated the deceptive prong of Gen. Mass. Laws ch. 93A by misrepresenting that the Products do not contain artificial flavors, when, in fact, they are made with synthetic ingredients.

127. Plaintiff Froio and the Massachusetts Subclass Members lost money or property as a result of Defendant's violations of Gen. Mass. Laws ch. 93A because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with unnatural and synthetic ingredients (b) they paid a substantial price premium compared to other fruit juice products due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

128. The acts or practices engaged in by Defendants as detailed herein above constitute unfair and deceptive trade practices within the meaning of statutory and case law developed under General Law Chapter 93A, and under applicable sections of the code of Massachusetts Regulations, FDC&A, CFR, and the herein cited provisions of the Federal Trade Commission Act, and further constitute "trade and commerce" as defined under Chapter 93A, Section1 and other applicable law.

129. Plaintiff Froio and the Massachusetts Subclass Members are entitled to damages and equitable relief as a result of Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Forty-Nine-State Class, New York Subclass, and Massachusetts Subclass as follows:

A. For an order certifying the Forty-Nine-State Class, New York Subclass, and Massachusetts Subclass; naming Plaintiffs as Class and Subclass representatives; and naming Plaintiffs' attorneys as Class Counsel representing the Class and Subclass members;

B. For an order finding in favor of Plaintiffs, the Forty-Nine-State Class, New York, Subclass, and Massachusetts Subclass, on all counts asserted herein;

C. For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D. For injunctive relief enjoining the illegal acts detailed herein;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For an order awarding Plaintiffs their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: September 24, 2018

Respectfully submitted

*/s/ David S. Godkin*

David S. Godkin (BBO #196530)
James E. Kruzer (BBO #670827)
**BIRNBAUM & GODKIN, LLP**
280 Summer Street
Boston, MA 02210
Tel: (617) 307-6100
Fax: (617) 307-6101
godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

OF COUNSEL:

L. Timothy Fisher (*Pro Hac Vice* pending)
Joel D. Smith (*Pro Hac Vice* pending)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700
ltfisher@bursor.com
jsmith@bursor.com

Reuben D. Nathan (*Pro Hac Vice* pending)
**NATHAN & ASSOCIATES, APC**
2901 W. Pacific Coast Highway, Suite 200
Newport Beach, California 92663
Tel: (949)270-2798
rnathan@nathanlawpractice.com